**Murray Morris KESSLER**

v.

**The UNITED STATES.**

No. 192–81C.

United States Claims Court.

July 12, 1983.

Murray Morris Kessler, pro se.

Francis J. Sailer, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

### OPINION

SPECTOR, Senior Judge.

Plaintiff, appearing *pro se,* seeks the return of a certificate of deposit in the face amount of $100,000, or a sum equivalent to the value thereof. The certificate and other personal items belonging to plaintiff were seized by the Government pursuant to a valid search warrant and retained for use in a criminal prosecution against plaintiff which was later dismissed. This matter was previously before the United States Court of Claims, predecessor of this court, on defendant's Motion to Dismiss and plaintiff's Motion for Evidentiary Hearing. On October 2, 1981, the U.S. Court of Claims denied defendant's motion, without preju-

dice, and remanded the case to its then Trial Division for further proceedings.[1] The case is now before this court on defendant's present Motion for Summary Judgment.

### Statement of Facts

Plaintiff alleges that he, doing business as Crest Packing Company, is the owner of a bank account in Tortola, British Virgin Islands. He further alleges, and the defendant admits, that the certificate of deposit evidencing that bank account and other personal items were seized under a warrant by agents of the United States Customs Service on July 11, 1972. Some of the items thus seized were returned to plaintiff in January 1974, but the remainder, including the certificate of deposit at issue here, were retained for use in the criminal proceeding. Defendant acknowledges that the certificate of deposit has not been returned. In July 1975 plaintiff was absolved of the charges against him and thereafter he and his counsel attempted unsuccessfully to secure return of the certificate of deposit.

At footnote 1 in its aforementioned order of October 2, 1981, the U.S. Court of Claims queried why Kessler and his attorneys "simply did not have a new certificate of deposit issued, as could have been done under domestic banking procedures." The court added: "Whether similar procedures are applicable to Tortola banks, of course, will have a direct bearing on whether the United States entered an implied contract to return the certificate of deposit and on whether a taking of the account has occurred."

Defendant argued before the U.S. Court of Claims in its Motion to Dismiss that the petition herein, filed *pro se* on March 23, 1981, was time barred by 28 U.S.C. § 2501[2], on the grounds that a cause of action accrued when the property was first seized by warrant on July 11, 1972. It also argued that the court was without jurisdiction to entertain the petition because it sought non-monetary relief. After acknowledging that it had, as a general rule, no power to issue declaratory or injunctive relief against the United States,[3] the Court of Claims held as follows:

> * * * Nevertheless, where a *pro se* plaintiff appears to have pled facts otherwise within our jurisdiction, it is also appropriate to construe the petition liberally as one for money damages.

One such liberal reading of this petition is that it alleges the Government entered an implied-in-fact contract to return the certificate of deposit at the close of criminal proceedings. *See, e.g., Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 461, 100 S.Ct. 647, 648, 62 L.Ed.2d 614 (1980). *See also Gordon v. United States,* 227 Ct.Cl. 328, 300–331, 649 F.2d 837, 838–839 & n. 4 (1981); *Kirkendall v. United States,* 90 Ct.Cl. 606, 613–614, 31 F.Supp. 766, 769–770 (1940). If so, plaintiff's claim would have accrued at the close of criminal proceedings in July 1975. The March 1981 petition would not then be time barred.

A second liberal reading of this petition is that it alleges a taking has occurred for which no just compensation was paid. We have long held, of course, that a taking compensable within the Fifth Amendment occurs when an owner is deprived of the use and possession of property. *Steel Improvement & Forge Co. v. United States,* 174 Ct.Cl. 24, 29–30, 355 F.2d 627, 631 (1966); *Stafford Ordnance Corp. v. United States,* 123 Ct.Cl. 787, 793, 108 F.Supp. 378, 381 (1952). For a compensable taking to occur, however, it is axiomatic that the Government must obtain more than mere custodial possession. Instead, the Government action must deprive the owner permanently of property.

1. *Kessler v. United States,* 229 Ct.Cl. 472 (1981).

2. 28 U.S.C. § 2501 provides in relevant part that "Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

3. Citing *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

In this regard, we think it critical that property not illegal in itself seized during a criminal investigation should be returned to the rightful owner at the close of the criminal proceedings. *See United States v. Wright,* 610 F.2d 930, 935 (D.C. Cir.1979). *See also United States v. La-Fatch,* 565 F.2d 81, 83 (6th Cir.1977), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978); *United States v. Palmer,* 565 F.2d 1063, 1065 (9th Cir.1977). As the Government was under an obligation to return the certificate of deposit, it follows that no permanent taking could occur until the Government ceased to hold the property in this manner.[3]

Thus, on appropriate facts, a taking could occur at various times during a criminal investigation. It might occur, as the facts alleged by plaintiff suggest, only when the Government fails to return property at the close of the criminal proceeding. It might occur, as we held in *Yokum v. United States,* 208 Ct.Cl. 972, 974–975 (1975), *cert. denied,* 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 80 (1976), at the time *contraband* is seized as the former owner's dominion over the property will be permanently ended. Or it might occur at some intermediate point when Government action is no longer consistent with mere custody of the property. *See King v. United States,* Ct.Cl. No. 30–79 (order entered July 27, 1979). [Emphasis in original.]

For purposes of this motion, we need not choose between plaintiff's potential claims based on an implied-in-fact contract and on a taking without just compensation. Nor need we decide precisely when, if at all, the alleged taking occurred. It is enough that plaintiff has alleged facts that place the date of either the alleged breach or the alleged taking within six years of the petition's filing. The Government's motion must presently be denied. As the determination of whether this petition is timely and therefore within our jurisdiction must neces-

sarily await proof of the matters discussed above, we remand this case to the trial division for a complete resolution.

---

[3] The court notes, although we do not deem it presently dispositive, that certain of Kessler's possessions seized in July 1972 were returned in January 1974, prior to trial. On appropriate facts, a taking might occur at that point, if it was then made clear to someone in Kessler's position that no further goods would be returned. In that instance, the Government's continued possession would presumably be inconsistent with mere custody.

In its present Motion for Summary Judgment, defendant again argues that plaintiff has no cause of action. Alluding to the earlier quoted footnote 1 in the Court of Claims order dealing with the ability under *domestic* banking procedures to have a new certificate issued, defendant contends that a similar procedure is available under the law of the British Virgin Islands. As evidence of this, defendant offers a report on the applicable law prepared by one Stephen F. Clarke, Senior Legal Specialist, American-British Law Division, Law Library, Library of Congress.

Plaintiff's response, however, alleges that the back of his certificate[4] contains terms that require possession of the certificate for redemption. He also alleges that the certificate is good for only one year. Plaintiff further argues that the institution which issued this certificate is no longer in business in the British Virgin Islands and that he can therefore no longer have it reissued.

In support of its present Motion for Summary Judgment, defendant also argues that there can be no contract implied in fact because no Government official had authority to bind the United States to a promise to return the certificate when it was seized. It is further argued that there was no meeting of the minds that the parties intended the certificate to be returned.[5]

*Discussion*

It is clear from the order of the U.S. Court of Claims denying defendant's earlier

---

4. Copy of the back is not submitted.

5. Affidavits of the Government employees who seized plaintiff's property under valid warrants are offered to support this argument.

Motion to Dismiss that the court perceived a number of factual issues in this case requiring further illumination at a trial. Defendant's present Motion for Summary Judgment would frustrate that perception.

The court alluded in its order to the theory of "an implied-in-fact contract to return the certificate of deposit at the close of criminal proceedings", and further related that theory of relief to the statute of limitations issue which had been raised by defendant. The latter issue was not again raised in defendant's present Motion for Summary Judgment, but the issues of when those criminal proceedings were closed [6] or when "the Government's continued possession would presumably be inconsistent with mere custody" [7] are still to be resolved by evidence to be developed at a trial.

With respect to a "taking" theory, the Court of Claims also stated:

> * * * As the Government was under an obligation to return the certificate of deposit, it follows that no permanent taking could occur until the Government ceased to hold the property in this manner. [Footnote omitted.]

Other issues in the case revolve around whether or not a new certificate of deposit could have been issued after plaintiff became aware that the certificate which had been seized by warrant would not be returned, or whether other means existed then or do now for claiming the funds allegedly represented by the certificate with or without presenting that certificate.

In short, the "complete resolution" by trial for which the Court of Claims remanded this case in its order of October 2, 1981, cannot be accomplished by ruling on defendant's Motion for Summary Judgment.

*Conclusion*

Defendant's Motion for Summary Judgment must be, and hereby is, Denied.

---

**6.** The issue was raised by this court, *sua sponte,* in telephone conference with the parties on June 3, 1983. In his original petition, plaintiff alleges that he was "acquitted" in July 1975. In an answer to a written interrogatory he alleges "acquittal" in 1974. During the aforementioned telephone conference of June 3, 1983, he spoke of dismissal of the criminal charges in 1974, followed by appeal, and affirmance on appeal of that dismissal in 1975.

**7.** See footnote 3 in the Court of Claims order of October 2, 1981, above quoted, suggesting that plaintiff's right to sue for return of the certificate of deposit may possibly have arisen when part of his possessions were returned in January 1974 and prior to trial.