**B & F TRAWLERS, INC. and International Bank, N.A.,**
Plaintiffs,

v.

**The UNITED STATES, Defendant.**

**No. 91–946C.**

United States Court of Federal Claims.

Dec. 9, 1992.

Andrew M. Tobin, with whom was James S. Mattson, Key Largo, FL, for plaintiffs.

Mark A. Melnick, with whom was Asst. Atty. Gen., Stuart E. Gerson, David M. Cohen, Director, and Jeanne E. Davidson, Asst. Director, for defendant. Lt. Commander R. Buckingham, U.S. Coast Guard, of counsel.

OPINION

ROBINSON, Judge.

This case is before the court upon a complaint which alleges a taking of plaintiffs' property under the Fifth Amendment of the United States Constitution, resulting from the destruction and sinking of plaintiffs' ship by the United States Coast Guard (USCG or Coast Guard). Plaintiffs seek a judgment against defendant for just compensation in the amount of $200,000, the alleged fair market value of the vessel on the date of sinking; for interest that has accrued since that date; for costs, including expert witness fees and attorney's fees; and for such further relief as may be appropriate. Defendant moves to dismiss this action for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4). Plaintiffs vigorously oppose defendant's motion. This court heard oral argument on defendant's motion on March 10, 1992. Based upon the facts alleged in the complaint, this court finds that plaintiffs have failed to state a claim upon which relief can be granted. Defendant's Motion to Dismiss is granted pursuant to RCFC 12(b)(4).

*Factual Background*

The Plaintiffs in this suit are B & F Trawlers, Inc., (B & F), and International Bank, N.A. (International). B & F is the owner of the ship F/V STAR TREK (STAR TREK), a U.S. documented vessel. International holds a lien interest in the STAR TREK.

On February 23, 1985, personnel from the USCG Cutter DALLAS (DALLAS) boarded the STAR TREK, determined that the vessel carried contraband, and arrested

the captain and crew for violations of United States customs laws.[1] A custody crew then boarded the STAR TREK, and directed the vessel towards Guantanamo Bay, Cuba. Shortly thereafter, the DALLAS encountered the USCG Cutter MESQUITE (MESQUITE). The MESQUITE took possession of the STAR TREK and continued towing it towards Cuba.

On the evening of February 25, 1985, a fire broke out aboard the STAR TREK. The MESQUITE, however, continued to tow the vessel until approximately 6:41 p.m. on February 26, 1985; at that time, the MESQUITE used .50 caliber machine guns to sink the STAR TREK.

Plaintiffs originally filed suit against the Government in the United States District Court for the Southern District of Texas under the Suits in Admiralty Act (SIAA), 46 U.S.C.App. §§ 741 *et seq.*, and the Public Vessels Act (PVA), 46 U.S.C.App. §§ 781 *et seq. B & F Trawlers, Inc. v. United States*, 841 F.2d 626, 627 (5th Cir.1988). Plaintiffs alleged that the Coast Guard failed to use due care while exercising custody and control of the STAR TREK, and that it deliberately sank the vessel. *Id.*

The district court concluded that the law enforcement exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(c) (1965), applied to the SIAA and the PVA. Accordingly, the court dismissed the case and ordered it transferred to this court. *Id.* On appeal, the United States Court of Appeals for the Fifth Circuit reversed the trial court and remanded the case for consideration of whether the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a) (1965), applied. *Id.* On remand, the district court concluded that:

1. The USCG officers acted in accordance with agency regulations, which empowered them to make policy decisions regarding boarding, searching, arresting, transporting, and destroying a vessel containing contraband;

2. They acted in furtherance of governmental purposes and according to their judgment as to the best course to take in carrying out law enforcement operations; and

3. Their actions were of the type that Congress intended to shield from tort liability under the FTCA discretionary function exception.

*B & F Trawlers, Inc. v. United States*, No. B–86–058, transcript at 2 (S.D.Tex. June 27, 1990) [hereinafter *Transcript* ]. The district court also determined that, even if the USCG had been negligent—and the court determined that it was not—the Coast Guard was shielded by the discretionary exception to the FTCA. Finally, the district court found that plaintiffs' ship had little or no value at the time of its destruction, and that it certainly would have been valueless by the time the fire was extinguished. *Transcript* at 4–5.

At oral argument before this court, defendant refrained from pursuing its 12(b)(1) argument and, instead, urged the court to dismiss plaintiffs' complaint pursuant to RCFC 12(b)(4) because the complaint failed to state a cause of action for a compensable taking. At the conclusion of oral argument, plaintiffs orally moved this court for an opportunity to amend the complaint to add allegations concerning unidentified policies of the USCG. This court denied plaintiffs' motion for the reasons that:

1. Plaintiffs' motion was untimely;

2. Granting the oral motion after oral argument would have unduly prejudiced defendant, who had received no notice of the proposal prior to oral argument;

3. To avoid delay, the court determined that it should decide the pending motion to dismiss before considering any further motion;

4. Denying the motion would not significantly prejudice plaintiffs while at the same time conserving judicial resources; and

5. Granting the motion would be a meaningless exercise, because the proposed amended complaint would still be

---

1. The record demonstrates that plaintiffs did not consent to or conspire to effect any of these

violations.

insufficient facially to comply with RCFC 12(b)(4).

### Contentions of the Parties

Plaintiffs contend that the actions of the Coast Guard in deliberately sinking the STAR TREK constitute a compensable taking under the Fifth Amendment takings clause of the United States Constitution. They allege that the USCG took private property in order to confer a benefit on the general public, by avoiding the costs associated with towing the STAR TREK into port for subjection to forfeiture proceedings, which otherwise would have been the taxpayers' burden.

Defendant contends that, to the extent plaintiffs allege unlawful action by the USCG, their complaint sounds in tort and should be dismissed for lack of subject matter jurisdiction. Defendant further contends that the Coast Guard's actions were a valid exercise of the Government's police power, because the USCG destroyed the STAR TREK, pursuant to 14 U.S.C. § 88(a)(4) (1990), in order to eliminate a floating danger to navigation. Therefore, defendant argues, plaintiffs fail to state a claim upon which relief can be granted.

### DISCUSSION

The issues to be decided here are whether this court has jurisdiction to entertain a claim for a compensable taking where plaintiffs contend that the Government acted unlawfully; and, secondly, whether the Coast Guard's acts of destroying and sinking plaintiffs' vessel constitute a compensable taking within the meaning of the Fifth Amendment of the United States Constitution, or whether their actions are a valid exercise of the Government's police power and, therefore, not a compensable taking.[2]

■ Under the rules of this court, evaluations of a motion to dismiss for lack of jurisdiction are usually limited to the pleadings, and the unchallenged facts alleged in the complaint are deemed to be true and are construed in a light most favorable to the plaintiffs. RCFC 12(b)(1); *Cupey Bajo Nursing Home, Inc. v. United States*, 23 Cl.Ct. 406, 411 (1991). Similarly, when considering a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations in the complaint are taken as true and all reasonable inferences are drawn in favor of the plaintiffs. RCFC 12(b)(4); *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Marshall v. United States*, 21 Cl.Ct. 497, 499 (1990). The standard for dismissal mandates that the court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), *quoted in Kinne v. United States*, 21 Cl.Ct. 104, 107 (1990).

**2.** It is unnecessary for this court to reach the question of whether the USCG, in fact, acted lawfully in sinking the seized vessel. Under the doctrine of *res judicata,* this court is bound by the determination of the district court that the USCG acted lawfully under the discretionary function exception to the FTCA.

> [T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, "[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac,* 94 [ (4 Otto) ] U.S. 351, 352[, 24 L.Ed. 195] (1877). The final "judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever." *Commissioner v. Sunnen,* 333 U.S. 591, 597[, 68 S.Ct. 715, 719, 92 L.Ed. 898] (1948).

*Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983).

In addition, regardless of how this court were to rule, either determination would require dismissal of plaintiffs' complaint. If the USCG's actions were found to be unlawful, the appropriate action for plaintiffs to pursue would be for tortious conduct, which falls outside of the jurisdiction of the Court of Federal Claims. *See Shaw v. United States,* 8 Cl.Ct. 796, 799 (1985). Alternatively, if the USCG was found to have acted lawfully, its actions would be considered an exercise of the Government's police power and would not constitute a compensable taking. *Neither conclusion affords plaintiffs the remedy they seek.*

I. *Allegations Which Sound in Tort Fall Outside the Court's Jurisdiction.*

■ The Court of Claims, this court's predecessor, concluded in *Armijo v. United States*, 229 Ct.Cl. 34, 663 F.2d 90 (1981), a regulatory takings case, that "[i]n such cases the characteristic feature is the defendant's use of *rightful* property, contract, or regulatory rights to control and prevent exercise of ownership rights the defendant is unwilling to purchase and pay for." 229 Ct.Cl. at 37, 663 F.2d at 93 (emphasis added), *quoted in Florida Rock Industries, Inc. v. United States*, 791 F.2d 893, 899 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987); *Torres v. United States*, 15 Cl.Ct. 212, 215–16 (1988). An assertion that the Government's action is unlawful is insufficient to allege a taking that vests jurisdiction in this court because "[c]hallenges to the propriety of government action sound in tort." *Montego Bay Imports, Ltd. v. United States*, 10 Cl.Ct. 806, 809 (1986); *Shaw*, 8 Cl.Ct. at 799. The Court of Federal Claims has no jurisdiction over actions that sound in tort. 28 U.S.C. § 1491 (1988); *see Florida Rock*, 791 F.2d at 898 ("A Tucker Act suit in the [Court of Federal Claims] is not ... available to recover damages for unauthorized acts of government officials.").

■ Here, plaintiffs contend that they are entitled to an award of damages due to the unlawful conduct of the Government. Specifically, they allege that the Government deliberately destroyed the STAR TREK in order to avoid bringing it into port for subjection to forfeiture proceedings, in an effort to save the general public the costs which would otherwise have been expended in bringing the ship to custody.[3] Congress, however, has provided that the only *lawful* grounds by which the Coast Guard may destroy a vessel at sea is when the vessel constitutes a floating danger to navigation.[4] 14 U.S.C. § 88(a)(4). The statute, therefore, does not, as plaintiffs point out, authorize the Coast Guard to destroy vessels in order to save money and time associated with submitting the property to forfeiture proceedings.

Furthermore, plaintiffs argue that the purposeful destruction of seized property to avoid forfeiture proceedings violates 21 U.S.C. § 881 (Supp.1992), which regulates forfeiture of vessels due to the presence of controlled substances, as was the case with the STAR TREK. *B & F Trawlers*, 841 F.2d at 627–28. Section 881(d) specifies that the provisions relating to seizure, forfeiture, and condemnation of property in violation of customs laws also apply to seizures and forfeitures pursuant to § 881. 21 U.S.C. § 881(d). Accordingly, the Coast Guard was required to adhere to the requirements specified at 19 U.S.C. §§ 1602–1619 (Supp.1992),[5] which mandate a complete procedure for the disposition of seized property through forfeiture proceedings.[6] 19 U.S.C. § 1600.

---

3. The relevant paragraphs of plaintiffs' Complaint state:

17. Defendant destroyed the STAR TREK to avoid bringing the res into the jurisdiction of the nearest United States District Court, where plaintiffs would have been entitled to participate in legal proceedings to recover the vessel or her value.

18. The destruction of the STAR TREK was solely for a public purpose, or purposes, including the decision of the USCG personnel to expend its energies on seizing vessels rather than taking them into custodia legis.

19. The decision to sink the STAR TREK, rather than bring her into the jurisdiction of the nearest District Court, benefitted the public at large by reducing overall Coast Guard expenditures and, therefore, reducing the public's tax burden.

4. 14 U.S.C. § 88(a)(4) states:

(a) In order to render aid to distressed persons, vessels, and aircraft on and under the high seas and on and under the waters over which the United States has jurisdiction and in order to render aid to persons and property imperiled by flood, the Coast Guard may:
(4) destroy or tow into port sunken or floating dangers to navigation.

5. 19 U.S.C. § 1600 (Supp.1992) states:

The procedures set forth in sections 1602–1619 shall apply to seizures of any property effected by customs officers under any law enforced or administered by the Customs Service unless such law specifies different procedures.

6. 19 U.S.C. § 1602 (1988) requires that:

It shall be the duty of any officer, agent, or other person authorized by law to make sei-

To the extent plaintiffs assert that the Coast Guard unlawfully sank and destroyed the STAR TREK, plaintiffs have failed to allege a tenable claim for a compensable taking; that is, plaintiffs allege a claim sounding in tort, which is beyond the jurisdictional parameters of this court. *See* discussion *supra* note 2. To the extent, however, plaintiffs allege that the Coast Guard's conduct—lawful conduct, that is—is akin to a "taking" of the STAR TREK, plaintiffs have indeed stated a proper claim over which this court has subject matter jurisdiction.

## II. *The Coast Guard's Actions Do Not Amount to a Compensable Taking.*

■ As discussed above, the USCG may lawfully destroy a vessel at sea when the vessel constitutes a floating danger to navigation. 14 U.S.C. § 88(a)(4). Destruction for any other reason, as plaintiffs assert in their complaint, constitutes unlawful conduct by the Government, which is a tort claim rather than a compensable taking under the Fifth Amendment.

The district court found that the destruction of the STAR TREK was lawful conduct by the USCG. Though binding on this court, that finding alone does not establish a compensable taking. This court concludes, rather, that the USCG's actions were within the Government's police power.[7]

The area of law which deals with the distinctions between "takings," within the meaning of the Fifth Amendment, and exercises of the police power is confusing, with " 'no rigid rules' or 'set formula' ... available." *Morton Thiokol, Inc. v. United States*, 4 Cl.Ct. 625, 630 (1984) (quoting Joseph Sax, *Takings and the Police Pow-*er, 74 Yale L.J. 36, 37 (1964)); *see Yuba Goldfield's, Inc. v. United States*, 723 F.2d 884, 887 (Fed.Cir.1983). Rather, it is necessary to engage in ad hoc, factual inquiries of each case. *Pennsylvania Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978); *Atlas Corp. v. United States*, 895 F.2d 745, 757 (Fed.Cir.), *cert. denied*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). However, "[s]ummary dismissal of a taking claim is appropriate where the circumstances alleged in the complaint, even if taken as true and all reasonable inferences are drawn in favor of the plaintiff, cannot establish that a taking has occurred." *Atlas Corp.*, 895 F.2d at 757.

For guidance, the United States Supreme Court has identified three factors that should be considered in determining whether a taking has occurred: "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984) (quoting *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 83, 100 S.Ct. 2035, 2041, 64 L.Ed.2d 741 (1980)); *Jarboe–Lackey Feedlots, Inc. v. United States*, 7 Cl.Ct. 329, 338 (1985). Whether Government action amounts to an exercise of police power relates primarily to the first of these factors. *Atlas Corp.*, 895 F.2d at 757.

### A. The Character of the Coast Guard's Actions.

The distinction between a Fifth Amendment taking and an exercise of the Government's police power is often based upon the rationale that in a compensable taking, the

---

zures ... to turn over and deliver to such customs officer any vessel, vehicle, aircraft, merchandise, or baggage seized by him, and to report immediately to such customs officer every violation of the customs laws.

19 U.S.C. § 1605 (1988) requires that:

All vessels, vehicles, aircraft, merchandise, and baggage seized under the provisions of the customs laws ... unless otherwise provided by law, shall be placed and remain in the custody of the appropriate customs officer for the district in which the seizure was made to await disposition according to law.

7. Note that upon remand of plaintiffs' tort case, the district court found that the Coast Guard's sinking of the STAR TREK was authorized and in compliance with agency directives. *Transcript* at 2. However, the district court clarified that the finding of no negligence on the part of the Coast Guard should not preclude plaintiffs from pursuing a claim under the Tucker Act. *Transcript* at 10, 12.

Government takes private property and puts it to public use; the new use operating to secure a benefit for the general public. *Franco–Italian Packing Co. v. United States*, 130 Ct.Cl. 736, 745–46, 128 F.Supp. 408, 414 (1955); *Morton Thiokol*, 4 Cl.Ct. at 630. On the other hand, when there is an exercise of the police power, the owner's property rights are restricted, because its unrestricted use would be injurious to the public. *Id.*

Making the distinction between a taking and an exercise of the police power, based upon public benefit or prevention of public harm, fails where the Government prohibits the use of property, not because the particular use is inherently noxious, but because it conflicts with another "innocuous activity." *Id.* at 630. In the case at hand, this problem does not arise. The district court concluded that the STAR TREK was sunk lawfully, that it constituted a danger to navigation, and that it was destroyed to prevent harm to the public welfare. *See Transcript* at 1–2, 12. The record before this court persuasively supports each of these conclusions. Therefore, the court finds that the destruction of the STAR TREK was a valid exercise of the Government's police power. *See American Mfrs. Mut. Ins. Co. v. United States*, 197 Ct.Cl. 99, 101, 453 F.2d 1380, 1381 (1972) (Government's action in sinking a vessel in order to protect U.S. citizens was not a taking for public use.). As the Supreme Court made clear in its decision in *Lucas v. South Carolina Coastal Council,* — U.S. —, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), the Government has the "power to abate nuisances that affect the public generally, or otherwise." — U.S. at —, 112 S.Ct. at 2900. Because public safety requires such action, the Government does not incur "a legal obligation . . . to compensate the owner." *United States v. Pacific R.R.*, 120 U.S. 227, 238–39, 7 S.Ct. 490, 495, 30 L.Ed. 634 (1887).

Nevertheless, plaintiffs charge that the Government's conduct fails the requirements for a valid exercise of the police power articulated by the Supreme Court in *Goldblatt v. Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). They contend that the sinking was not required by the public interest, the means were not reasonably necessary to accomplish the purpose, and the sinking was unduly oppressive. *Id.* at 594–95, 82 S.Ct. at 990; *Morton Thiokol*, 4 Cl.Ct. at 629.

Plaintiffs urge this court to apply the standards set forth in *Goldblatt*, but plaintiffs neglect to apply such standards to the facts of their own case. Moreover, the Supreme Court declared in *Goldblatt* that an exercise of the police power by the Government is presumed to be reasonable and that the party challenging the Government action bears the burden of demonstrating that it is unreasonable. *Id.* at 596, 82 S.Ct. at 991. Plaintiffs have failed to meet this burden.

Thus, the question for this court is whether the sinking of the STAR TREK was reasonable if the vessel was a danger to navigation.[8] When the Supreme Court imposed the above-stated standards on the police power, the court qualified that "even this rule is not applied with strict precision, for this court has often said that 'debatable questions as to reasonableness are not for the courts but for the legislature....'" *Goldblatt*, 369 U.S. at 595, 82 S.Ct. at 990 (quoting *Sproles v. Binford*, 286 U.S. 374, 388, 52 S.Ct. 581, 585, 76 L.Ed. 1167 (1932)). In this case, Congress has decided that a reasonable method to deal with a vessel which constitutes a floating danger to other ships is to sink it. This court finds nothing in plaintiffs' allegations that justifies upsetting this determination; therefore, the Coast Guard's actions in this case are best characterized as a valid exercise of the Government's police power.

---

8. This question is distinct from whether it was reasonable for the Coast Guard to determine that the STAR TREK was a danger to navigation. The court must conclude that the STAR TREK was a floating danger to navigation, because, if it was not, the Coast Guard was not acting pursuant to 14 U.S.C. § 88(a)(4), and plaintiffs' claim is beyond this court's jurisdiction. Plaintiffs confuse the "reasonableness" of an exercise of the police power with the "reasonableness" standard applied to tort actions involving negligence.

B. The Economic Impact of the Coast Guard's Actions.

As to the economic impact of the Coast Guard's actions, defendant urges that, based upon the findings of the district court in the negligence proceedings, plaintiffs did not suffer any pecuniary loss as a result of the sinking of the STAR TREK.[9] In measuring economic impact, other courts have looked to see whether there was an interference with production, or whether the Government action made the property unprofitable. *Atlas*, 895 F.2d at 758. Here, there was no Government action that rendered plaintiffs' property unproductive or unprofitable. As the district court stated, the STAR TREK was a "valueless hulk" due to the fire, which burned uncontrollably for approximately twenty-four hours prior to the Coast Guard sinking the vessel. *Transcript* at 4–5. The economic impact of this action was negligible, given the destruction of the fire.[10]

C. Interference with Plaintiffs' Investment–Backed Expectations.

Finally, plaintiffs fail to demonstrate any interference with their investment-backed expectations as would support a "taking" determination. *Atlas Corp.*, 895 F.2d at 758. In *Miller v. Schoene*, the Supreme Court sustained interference with investment-backed expectations as an exercise of the police power where the destruction of red cedar trees infested with red cedar rust was required because they imperiled more valuable adjacent apple orchards. 276 U.S. at 279, 48 S.Ct. at 247. Here, as owners of a United States registered sea vessel, plaintiffs should have expected that, where a vessel represents a danger to navigation, the USCG would have authority to destroy it in order to protect the general public. "[A]ll property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the communi-

ty." *Mugler v. Kansas*, 123 U.S. 623, 665, 8 S.Ct. 273, 299, 31 L.Ed. 205 (1887), *quoted in Atlas Corp.*, 895 F.2d at 758.

In summary, plaintiffs' allegations fall short of a compensable taking under the Fifth Amendment: the USCG validly exercised the Government's police power; the economic impact of the Coast Guard's actions was slight, given that the STAR TREK was almost worthless due to severe fire damage; and plaintiffs should have reasonably expected the Coast Guard to act as it did under the circumstances.

### CONCLUSION

Where plaintiffs allege unlawful action by the USCG, their allegations sound in tort and this court lacks jurisdiction over the claims. This court does have jurisdiction, however, over the subject matter of plaintiffs' allegations that the USCG's lawful conduct was a taking under the Fifth Amendment. Nevertheless, plaintiffs' claims are insufficient to constitute a compensable taking. Defendant's motion to dismiss, therefore, is granted pursuant to RCFC 12(b)(4).

The Clerk will enter judgment accordingly. No costs.

---

**9.** The district court concluded that the STAR TREK was already valueless at the time of the sinking or surely would have been so by the time it was towed into port. *Transcript* at 4–5.

**10.** At oral argument, plaintiffs requested that they be given an opportunity for a factual determination as to whether the STAR TREK was

actually a "valueless hulk". However, the law does not require that property be determined valueless as a prerequisite to the Government being able to destroy it in an exercise of its police powers. *See Miller v. Schoene*, 276 U.S. 272, 279, 48 S.Ct. 246, 247, 72 L.Ed. 568 (1928).