**AMERISOURCE CORPORATION, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 04–610C.

United States Court of Federal Claims.

March 23, 2007.

Maurice R. Mitts, with whom was Carolyn M. Plump, Philadelphia, PA, for Plaintiff.

Gerald M. Alexander (opening brief), Robert E. Chandler (reply), with whom were Deborah A. Bynum, David M. Cohen, and Peter D. Keisler, Department of Justice, Washington, D.C., for Defendant.

John M. Bergen, Law Clerk; Elizabeth Bradshaw, Intern.

## OPINION

BASKIR, Judge.

The present matter comes before us for the second time on the Government's renewed motion to dismiss. AmeriSource Corporation is a wholesale distributor of pharmaceuticals whose products were seized and retained as evidence in criminal proceedings

against third parties. The Plaintiff, which is not implicated in the criminal activities of the third parties, alleges a Fifth Amendment taking. It demands just compensation in excess of $150,000, the original value of the pharmaceuticals which have since aged beyond their expiration date. Defendant contends that the retention of the property falls within the Government's police power and is, therefore, not compensable under the takings doctrine.

Although we do not accept all of the Government's arguments, we conclude that AmeriSource's claims are not compensable under takings jurisprudence. **We, therefore, GRANT Defendant's motion.**

### Factual Background

Although familiarity with the following facts is not necessary for the resolution of the legal issues in this case, we relate them in some detail to provide the context in which the legal issues arise.

### Seizure of Pharmaceuticals

In early August 2000, AmeriSource entered into a contract to sell Viagra, Xenical, and Propecia to Norfolk Pharmacy (Norfolk) for $150,856.26. Plaintiff delivered fully conforming shipments of the drugs to Norfolk at the latter's principal place of business in Weirton, West Virginia.

On July 27, 2000, immediately prior to entering into this contract, Norfolk's principals, Anita Yates and Anton Pusztai, were indicted by a Federal grand jury in Alabama. They were charged with conspiracy, unlawful distribution of prescription pharmaceuticals, dispensing misbranded pharmaceuticals, operating an unregistered drug facility, and conspiracy to commit money laundering.

On August 7, 2000, the United States executed a search warrant of Norfolk's facility in Weirton, West Virginia. As part of its investigation, the United States Attorney for the Middle District of Alabama seized a large quantity of pharmaceuticals, including the pharmaceuticals that had just been shipped by AmeriSource. Norfolk had not tendered payment to AmeriSource at the time of seizure. Norfolk has since become defunct, with the outstanding AmeriSource debt left unresolved.

### Plaintiff's Rule 41(e) Motion

On October 2, 2000, AmeriSource filed a motion in the United States District Court for the Middle District of Alabama seeking an order requiring the Government to return the seized pharmaceuticals to AmeriSource. AmeriSource Corporation's Motion for Release of Property (Oct. 2, 2000); Def.App. 1–7. Although it was not captioned as such, the court treated AmeriSource's request as a formal motion under Rule 41(e) of the Federal Rules of Criminal Procedure. The rule, which has since been renumbered Rule 41(g) without substantive changes, provides the following remedy to property owners in Plaintiff's position:

> A person aggrieved by an unlawful search and seizure of property *or by the deprivation of property* may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

FED.R.CRIM.P. 41(g) (emphasis added).

In connection with its motion, Plaintiff argued that the pharmaceuticals would soon expire and become worthless. Motion for Release of Property; Def.App. 2. The United States opposed AmeriSource's motion, claiming these pharmaceuticals were required as evidence in the criminal trials of Ms. Yates and Mr. Pusztai. *See* Government's Response to AmeriSource Corporation's Motion for Release of Property (Oct. 17, 2000); Def. App. 14–19. Furthermore, the Government assured the Court that it would complete the trial well in advance of the expiration dates listed on the pharmaceuticals. *Id.* at 18. The expiration dates were in April and May of 2003, two and one-half years away at that point in time.

In its reply brief, AmeriSource suggested the Court could order the prosecution to retain a representative sample of the pharmaceuticals for trial and return the balance. *See* (AmeriSource Corporation's Reply Regarding Motion for Release of Property Dec.

20, 2000); Def.App. 20 ("The government cannot retain *per se* legal property for evidentiary purposes when its interests can be adequately served by counting, weighing, testing, photographing, photocopying or retaining a small sample of the product.") (citing MOORE'S FEDERAL PRACTICE, § 641.21[5], 641–82). AmeriSource indicated that both Ms. Yates and Mr. Pusztai consented to the release of the property back to AmeriSource. Def.App. 21.

The district court permitted AmeriSource to inspect the seized drugs in order to identify those drugs it had shipped to Norfolk. Apparently the search of the Norfolk business yielded drugs from other sources, as well. Plaintiff identified several items among the seized evidence that it had shipped to Norfolk but could not identify the entire shipment. *See* AmeriSource Corporation's Report Regarding Inspection of Property (Feb. 22, 2001) and AmeriSource Corporation's Response to Order (Mar. 8, 2001); Def. App. 24–29.

On March 20, 2001, the United States filed a supplemental response to the Plaintiff's motion, rejecting the proposal to use only a representative sample of the seized pharmaceuticals. Government's Supplemental Response to AmeriSource Corporation's Motion for Release of Property (Mar. 21, 2001); Def. App. 30–40. The prosecution's trial strategy was to present all of the property in question at trial, in order to establish the illicit nature of the criminal defendants' sales activity. The Government also reiterated that AmeriSource had failed to avail itself of available civil remedies against Norfolk and its principals. *Id.* at 39–40.

Finally, on January 28, 2002, almost 18 months after the Government first took custody of Plaintiff's property, the magistrate judge issued a recommendation that the district court deny the Plaintiff's motion. Recommendation and Order, Magistrate Judge Susan Russ Walker (Jan. 28, 2002); Def.App. 41–46. AmeriSource failed to file any objections to the magistrate's recommendation. Consequently, on February 11, 2002, the presiding judge adopted the recommendation and denied the Rule 41(e) motion. Order, Case No. 00–109–N (Feb. 11, 2002); Def.

App. 47. In the Discussion that follows, we address in more detail the Rule 41 proceedings.

### Criminal Trial and Subsequent Appeals

Ms. Yates and Mr. Pusztai were convicted in June of 2002. Contrary to the Government's position in the litigation of the Rule 41 motion, prosecutors did not use as evidence the drugs which had been identified by AmeriSource. Notwithstanding the success of the prosecution, and the impending expiration of the pharmaceuticals, the drugs were not returned to AmeriSource. Instead, they were retained for possible use in a retrial.

That precaution proved prescient. Ms. Yates and Mr. Pusztai appealed their convictions to the United States Court of Appeals for the Eleventh Circuit. The appeals court found that Ms. Yates and Mr. Pusztai had been denied their Sixth Amendment rights when the district court permitted a prosecution witness to testify by video teleconference. The convictions were reversed and the cases remanded for a new trial. Prosecutors filed a petition for rehearing. The appeal was reargued and on February 13, 2006, the full court upheld the panel's decision. *United ed States v. Yates*, 438 F.3d 1307 (11th Cir. 2006) *(en banc)*. The district court scheduled a new trial date for the end of February 2007. In the interim, however, both defendants changed their pleas to guilty, apparently pursuant to plea agreements dismissing certain charges. According to the public dockets for those cases, Mr. Pusztai was sentenced November 27, 2006, to 60 months confinement. Ms. Yates was sentenced to 49 months confinement on March 22, 2007, the day before the issuance of this Opinion.

Thus, the property at issue in this takings claim was never used for trial. AmeriSource's pharmaceuticals had expired in the midst of the appeals and rehearings. Once expired, the Government would not have released the property in any event. Transcript of Oral Argument on Initial Motion to Dismiss at 14.

### Alternative Remedies

As a final piece of background, we note that AmeriSource did not place all its hopes in the return of the property by the trial

court or by the United States Attorney. While unsuccessfully petitioning the trial court in Alabama for the drugs, Plaintiff also brought a civil action against Norfolk. On August 20, 2002, the United States District Court for the Northern District of West Virginia entered a default judgment against Norfolk, and awarded AmeriSource damages in the amount of $208,070.12—$149,691.36 for the unpaid invoices and the remainder in attorney fees and interest. Compl., ¶ 40; Def.App. 69. Apparently AmeriSource has been unable to collect on this judgment since Norfolk, which had ceased operations, had no assets. Compl., ¶ 41–42. Although well beyond the scope of our case, there may be methods by which Plaintiff could satisfy this judgment. We do not know whether or to what extent Plaintiff has pursued this course of action.

The fact that Plaintiff obtained a civil judgment against Norfolk may well have divested Plaintiff of its property interest in the pharmaceuticals, themselves. If so, this would adversely affect the merits of Plaintiff's takings case. A takings claim may be maintained only by the lawful owner of the property for which just compensation is sought. *Aulston v. United States,* 11 Cl.Ct. 58, 60 (1986), *aff'd in part and vacated in part,* 823 F.2d 510, 513 (Fed.Cir.1987).

### Procedural History

Plaintiff filed its complaint against the United States in this Court on April 8, 2004. Defendant initially filed a motion to dismiss Plaintiff's claim for lack of jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6), respectively. The crux of the Government's argument in support of the motion was that no taking occurred because the United States acted pursuant to its police powers. On November 15, 2005, we denied the Defendant's motion without prejudice. *AmeriSource Corp. v. United States,* No. 04–610C (Fed.Cl. Nov.15, 2005) ("Order").

In the wake of this ruling, the Plaintiff and Defendant voluntarily suspended further proceedings while exploring settlement with the assistance of an ADR judge. The parties also did some informal discovery in conjunc-

tion with these settlement efforts. Ultimately, however, the parties submitted a joint status report expressing the Government's desire to terminate settlement negotiations and renew its motion to dismiss.

The Government supplemented its motion with Rule 41 information that had not been presented when its motion was first heard. On August 8, 2006, several days after the Government filed its second motion to dismiss, the Federal Circuit decided the case of *Acadia Technology, Inc. v. United States,* 458 F.3d 1327 (Fed.Cir.2006). In its October 4, 2006, reply brief, the Defendant argued this new authority in support of its police power theory, and contended that the opinion undermines the basis of our previous holding. We permitted the Plaintiff to file a surreply on October 24, 2006, in order to respond to the new authority and counter the Government's revised argument.

The Defendant's case for dismissal has evolved significantly since the briefing of its initial motion, most notably as a result of its belated familiarity with the Rule 41 proceedings in district court. Indeed, this rule of criminal procedure was never mentioned in the Complaint or in the papers filed by the parties, and we were unaware that any such proceedings had been conducted. Counsel only had the most rudimentary knowledge of the criminal proceedings and the formal rulings on Plaintiff's request for relief. The first round of briefing merely stated in general terms that the district court denied Plaintiff's request for the property. Counsel could offer no corroboration for its representations. Only after the Court pressed this issue during oral argument, did the Government promise to enlighten the Court concerning the impact of the independent adjudicatory process on Plaintiff's takings theory. As a result, the Defendant filed an entirely new motion with an 84–page appendix, including documents and orders filed as part of the Rule 41 litigation, a declaration by one of the prosecuting attorneys, and other matters pertaining to civil remedies Plaintiffs have allegedly neglected to pursue in district court.

The litigation of Defendant's motion to dismiss has progressed well beyond the Plain-

tiff's pleadings. We, therefore, treat the Defendant's motion as a motion for summary judgment, as opposed to a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief may be granted. Under our Rules:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by RCFC 56.

RCFC 12(b); *see also Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed. Cir.2000); *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1164 (Fed.Cir.1993).

Accordingly, we apply the well known standards of RCFC 56 to the exhibits accompanying Defendant's brief, most of which are court documents having purely legal significance. Both parties in this case have been afforded the opportunity to present facts and argument pertinent to the Rule 41 question. *See* Transcript of Status Conference (Apr. 26, 2006) at 20 (Court identified issues for briefing and permitted the parties to engage in limited discovery). We find the supplemental briefing sufficiently informative and, therefore, dispense with a second hearing on this matter.

### Discussion

### Just Compensation Under the Fifth Amendment

■ The "takings clause" of the Fifth Amendment to the United States Constitution provides: "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V, cl. 4. This provision prevents the government from imposing burdens on the property of individuals, when in fairness, the public should bear the burden. *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). The provision does not prohibit the taking of private property or governmental interference with property rights, but rather guarantees compensation for property owners when otherwise legitimate activities of the government amount to a taking. *Commonwealth Edison Co. v. United States*, 46 Fed.Cl. 29, 41 (2000) (quoting *First English Evangelical Lutheran Church of Glendale v. Co. of Los Angeles*, 482 U.S. 304, 315, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)). Accordingly, takings claims are "founded upon the Constitution" and give rise to our jurisdiction under the Tucker Act. *See* 28 U.S.C. § 1491(a)(1); *United States v. Causby*, 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946).

### Limits of the Police Power

■ It is well settled that when the Government acts pursuant to its police power, independent of Fifth Amendment rights, in order to protect the general health, safety and welfare of its citizens, no compensable taking occurs. *See Atlas Corp. v. United States*, 895 F.2d 745, 757–58 (Fed.Cir.1990), *cert. denied*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). As this Court has held, property taken not to secure a public benefit but rather to prevent public harm is not compensable under the Fifth Amendment. *Seay v. United States*, 61 Fed.Cl. 32, 35 (2004); *see also, Scope Enterprises, Ltd. v. United States*, 18 Cl.Ct. 875, 883 (1989) (No compensable taking where Government acted to prevent illegal exportation of classified military equipment). In the present case, the Defendant argued that whenever it seizes and retains property intended for use as evidence in a criminal prosecution, no other showing is necessary for this to constitute a noncompensable exercise of police power. Accordingly, the Government contends its retention of the Plaintiff's pharmaceuticals did not violate the Plaintiff's Fifth Amendment rights.

■ While we, of course, recognize the relationship of the police power and takings, we were not prepared to accept uncritically the Government's bare assertions at the initial stages of this litigation, especially given the procedural posture of the case. *See Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001) (On Rule 12(b)(6)

motion, Court "must accept as true all factual allegations in the complaint ... [and] indulge all reasonable inferences in favor of the non-movant."). Thus we invited Defendant's second effort. *See* Order (Nov. 15, 2005) (denying Defendant's Rule 12 motions without prejudice); Joint Status Report (Mar. 24, 2006) (Defendant requests opportunity "to provide the Court sufficient factual and legal detail to allow the Court to rule conclusively with regard to its jurisdiction in this matter"). Defendant has made full use of that opportunity. The case is now in a different procedural and factual posture than it was with the original motion. While the Government asks that we reconsider our prior ruling, we see no reason to turn the clock back. We will decide the case on the present record.

### Effect of Rule 41(e) Motion on Takings Claim

The details of the Rule 41(e) litigation are recounted both because they are interesting in themselves, and because they shed light on the position taken by the parties in the present litigation. These details do not, however, control in resolving the Government's motion. Disputes as to the facts underlying the district court proceedings are of no significance for us.

As we have previously indicated, Ameri-Source filed a motion in the district court requesting return of the pharmaceuticals it had shipped to Norfolk that the Government seized. After coordinating with the prosecuting attorneys for the Yates/Putsztai trial, the company itemized the following pharmaceuticals: (1) 667 bottles of 100 mg. Viagra and 25 bottles of 50 mg. Viagra; (2) 24 bottles of 120 mg. Xenical; and (3) 10 boxes of 1 mg. Propecia. Recommendation of the Magistrate Judge (Jan. 28, 2002); Def.App. 41. AmeriSource's pharmaceuticals represented only a portion of the total amount of evidence seized. Apparently, a wide variety of medication from a number of distributors had been shipped to Norfolk. At a hearing held on February 15, 2001, it "became clear ... that neither AmeriSource nor the government knew exactly which medications shipped by AmeriSource to Norfolk were actually in the possession of the government and claimed by AmeriSource." *Id.* at 42. A period of inspections and responsive pleadings followed. Finally, one week before the criminal trial commenced, the magistrate judge issued her formal recommendation.

The magistrate judge found that Plaintiff was not entitled to return of the evidence for several reasons. First, AmeriSource could not conclusively establish ownership for a large portion of the pharmaceuticals outlined in its request. *Id.* at 41. Second, the expiration date for the items which could actually be linked to AmeriSource would not occur until Spring 2003, over a year after the trial date. Because the pharmaceuticals were apparently being maintained at the proper temperature while in the government's custody, the magistrate reasoned AmeriSource had failed to establish that it will be irreparably harmed by government retention of the property for possible use at trial. Def.App. 44–45. And, finally, the magistrate found that AmeriSource had not demonstrated that it lacked an adequate remedy at law. Def. App. 45. This last ground for denial implies that AmeriSource could pursue a civil judgment against the company or its principals for non-payment. In fact, Plaintiff had just filed a breach of contract action against Norfolk two weeks prior to the magistrate's recommendation. It did not obtain a judgment until August of that same year.

The Order issued by the magistrate advised the parties to file any objections to her proposed findings and recommendation prior to January 30, 2002, and further warned that failure to file objections would bar *de novo* review of those issues by the district court. Def.App. 46. AmeriSource did not file any objections, and the district court subsequently adopted the magistrate's findings and denied the Rule 41(e) motion in a one-paragraph order. *See* Order (Feb. 11, 2002); Def.App. 47.

At some point very close to the time of the magistrate judge's resolution of the Rule 41 motion (the exhibit list for trial was due on January 25, 2002), the prosecutors decided "to narrow [their] focus," and opted not to present all of the pharmaceuticals that had been retained. The property identified as

belonging to AmeriSource was not used at all. *See* Hardwick Decl., ¶¶ 9–13. Of course, we are in no better position than was the district court to second guess the prosecutors' ability to prepare for possible exigencies of proof and to present the Government's case in the manner of their choosing. The fact the body of evidence was pared down on the eve of trial in no way affects the legitimacy of the Rule 41 process.

### *Reasonable Exercise of Police Power*

Because an aggrieved property owner has at his disposal the Rule 41 procedure itself, the Government's actions do not give rise to a compensable taking. We do not sit as a reviewing court to evaluate the procedures or findings of a Rule 41 proceeding. *Joshua v. United States*, 17 F.3d 378 (1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts."); *Cf. Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed.Cir.2001) (Tucker Act jurisdiction over *in rem* forfeiture preempted due to specific and comprehensive statutory scheme for administrative and judicial review carried out under the auspices of the district courts); *Hammitt v. United States*, 69 Fed. Cl. 165 (2005) (same), *aff'd*, 209 Fed.Appx. 986 (Fed.Cir.2006); *see also, Carranza v. United States*, 67 Fed.Cl. 106, 112 (2005) (alternative holding in Rule 41(g) context follows *Vereda).* We simply consider the entire process—including the Government's justifications for maintaining custody of the property and the magistrate's recommended disposition of Plaintiff's motion for its return—in order to determine, as an objective matter, whether the alleged deprivation is aimed at obtaining a public use or benefit, or whether it furthers a police function. As we stated above, this distinction defines the line between compensable and noncompensable governmental action.

A judicial endorsement of the Government's retention of property as evidence demonstrates to us that there has been a reasonable exercise of the Government's police power. The Rule 41 proceedings make it clear that the Government does not seek to convert Plaintiff's property for public use but rather to temporarily retain the property in order to perfect a case against those who intended to use the property in the furtherance of a criminal enterprise. A portion of the pharmaceuticals remained in their original packaging and reasonable measures were apparently taken to preserve them. The magistrate expressly invited AmeriSource to file objections to its findings, yet none were entered.

In light of the Rule 41 process, the Government was incorrect in suggesting that its police power is unlimited and not subject to a standard of reasonableness. *See United States v. Wilson*, 540 F.2d 1100, 1103–04 (D.C.Cir.1976) (Discussing duty of the trial court to ensure the return of property seized during an investigation once it is no longer needed for evidentiary purposes); *Kessler v. United States*, 3 Cl.Ct. 123 (1983) (same); *see also, Goldblatt v. Town of Hempstead*, 369 U.S. 590, 594–95, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962) (exercise of police power must be necessary to protect the public interest and not unduly oppressive to the property owner) (citing *Lawton v. Steele*, 152 U.S. 133, 137, 14 S.Ct. 499, 38 L.Ed. 385 (1894)).

In fact, the Federal Rules Advisory Committee notes concerning the 1989 amendments to Rule 41 illustrate that reasonableness is built into this scheme:

> If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable.

Fed.R.Crim.P. 41(g) (Advisory Committee Notes, 1989 Amendments).

Defendant insists the Government's action here was plainly an exercise of police power. In fact, other takings cases in which Rule 41 proceedings had been involved at the district court level do not lend support to the assertion. Where evidence is retained for use at trial, as opposed to being set aside for destruction or forfeiture, judges of this Court have dismissed takings claims on alternative grounds, without reaching the question of whether the police power doctrine barred

relief. *See Carranza*, 67 Fed.Cl. at 110–12 (held takings claim barred under *res judicata* due to district court's adverse ruling on Rule 41(g) motion); *Carter v. United States*, 62 Fed.Cl. 365, 369–70 (2004) (takings claim stayed while portion of claim that had not yet been subject to Rule 41 adjudication transferred to district court); *Duszak v. United States*, 58 Fed.Cl. 518, 520–21 (2003) (takings claim dismissed on ripeness).

A number of Article III courts have also suggested that a takings claim would lie under some circumstances to compensate the owner for the value of the property. *See e.g., United States v. Hall*, 269 F.3d 940 (8th Cir.2001) (Citing Tucker Act, court noted that "[a] cause of action may accrue under one or more of those statutes when the government discloses that it has lost, destroyed, or transferred property that would otherwise be subject to a Rule 41(e) order to return."); *see also, Lowther v. United States*, 480 F.2d 1031 (10th Cir.1973) (taking without due process for unauthorized forfeiture). Moreover, certain district courts have rested on their concurrent Tucker Act jurisdiction in compensating owners for the lost value of their property. *See United States v. One 1961 Red Chevrolet Impala Sedan*, 457 F.2d 1353, 1356–57(5th Cir.1972) (Rule providing for relief from judgment did not give district court authority to compensate claimant for improperly forfeited property; appropriate remedy is under Little Tucker Act); *United States v. One 1965 Chevrolet Impala Convertible*, 475 F.2d 882, 886 (6th Cir.1973) (in the event of vacated forfeiture, depreciation of property compensable under Little Tucker Act); *but see, United States v. One 1979 Cadillac Coupe De Ville*, 833 F.2d 994, 999 (Fed.Cir. 1987) (forfeiture statute provides only for return of property; vehicle's depreciation in value during period of government custody not compensable taking).

Defendant provided little authority on the Government's taking of property strictly for its evidentiary value. The Government focuses on property seized as a result of its illicit nature or its illegal use. This distinction cannot be so cavalierly disregarded. The Defendant has cited to clear examples— seizures of contraband, property subject to forfeiture, or property which poses a serious public threat—where the police power trumps an owner's property interests. In each of these areas, there is ample precedent establishing that the Government acts pursuant to its police power, and not to secure property for a public use. *See e.g., Bennis v. Michigan*, 516 U.S. 442, 446, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (property interest in automobile may be forfeited by reason of use to which property is put, even where owner was unaware of illicit use); *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 668, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (unknowing owner's interest in yacht forfeited as a result of lessee's possession of narcotics); *see also, Atlas Corp.*, 895 F.2d at 757–58 and *B & F Trawlers, Inc. v. United States*, 27 Fed.Cl. 299, 304–05 (1992) (relying on public safety rationale).

The Defendant's incorporation of the *Acadia* decision in its reply brief is merely the most recent instance in which the Government's police power is manifest. As the Court of Appeals observed in that case, "[a] Customs seizure of goods suspected of bearing counterfeit marks is a classic example of the government's exercise of police power to condemn contraband or noxious goods." *Acadia*, 458 F.3d at 1332. The Defendant brings that case to our attention for the obvious and unremarkable conclusion that a takings claimant must concede the lawfulness of the Government's initial seizure and continued possession of the property. The Court of Appeals found that the takings claim alleging improper seizure and subsequent unreasonable delay in initiating forfeiture proceedings, fails in that it is predicated upon unlawful government conduct. *Id.*, at 1332–34; *See Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed.Cir.1993) ("claimant must concede the validity of the government action which is the basis of the taking claim") (citing *Florida Rock Indus. v. United States*, 791 F.2d 893, 899 (Fed.Cir. 1986), *cert. denied*, 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987)). AmeriSource has made no such challenges. *See* Plaintiff's Response at 14 ("We readily acknowledge, and support, the Government's need to Retain AmeriSource's product as reasonably necessary to th[e] prosecution.")

The most analogous case found in the Defendant's briefs is *Interstate Cigar Co. v. United States*, 32 Fed.Cl. 66 (1994). In that case, this Court held against a plaintiff seeking compensation under a takings theory for prescription drugs labeled for export only and being diverted to the domestic market. *Id.* at 67. The drugs were seized by United States Customs Service officials and subsequently retained beyond their expiration date while an investigation continued. Judge Hodges rejected the takings claim under the police power doctrine, finding that the prescription pharmaceuticals were retained in order to "curb the illegal operation of a diversion market for prescription drugs." *Id.* at 70. The Court also found that the Government's actions were based on the belief that the drugs presented a "serious threat to public health" and could no longer be legally sold on the domestic market. *Id.*

This rationale does not wholly apply in the present case—the Government has conceded that its custody of AmeriSource's pharmaceuticals was *not* predicated on public safety grounds. Despite the distinction, we found *Interstate Cigar* helpful in that it confirmed that Plaintiff's claims should not be dismissed based solely on the pleadings. To the contrary, that decision—which resulted from a trial, not a hearing on a Rule 12 motion—demonstrated the careful balance struck between just compensation under the Fifth Amendment and the Government's police powers.

Therefore, merely invoking the police power without providing any context for the Government's actions does not suffice. Both *Interstate Cigar* and Defendant's newly cited authority support our original view that the police power is not necessarily absolute:

> While it is *insufficient to avoid the burdens imposed by the Takings Clause simply to invoke the "police powers" of the state, regardless of the respective benefits to the public and burdens on the property owner,* the prohibition on importing goods bearing counterfeit marks that misrepresent their quality and safety is the kind of exercise of the police power that has repeatedly been treated as legitimate even in the absence of compensation to the owners of the imported property.

*Acadia,* 458 F.3d at 1332–33 (emphasis added).

In RCFC 12(b)(6) parlance, we could not conclude based on the pleadings alone that the Plaintiff could prove no set of facts entitling it to relief. *See* Order (Nov. 15, 2005) ("public safety purpose [here] cannot be inferred from the pleadings."); *King v. United States,* 221 Ct.Cl. 838, 840–41, 1979 WL 10394 (1979) (Supplied with "sketchy information" Court denied motion to dismiss without prejudice: "It may well be ... defendant will be able to prevail on summary judgment, but we think it should at least come into court and show from its records what it did."). The Rule 41 procedure subsumes the inquiry. In the second round of briefing, Defendant defined the authority under which its agents acted and the process by which the district court endorsed the Government's actions. Once the government survives this inquiry, that is the end of the takings analysis in our review.

We, therefore, conclude that the police power rationale does apply in this context just as it would in the long line of forfeiture cases. The ability of federal prosecutors to deprive property owners of certain items in order to secure justice and a fair trial for a criminal defendant is a legitimate and traditionally accepted exercise of the police power. Accordingly, it is by definition not a compensable taking. *See Acadia,* 458 F.3d at 1331 (enforcement of Tariff Act not "public use" of property for which Takings Clause requires compensation); *see also, Bibb v. Navajo Freight Lines,* 359 U.S. 520, 529, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959) (exercise of police power is presumed to be constitutionally valid). To the extent the property owner challenges the scope of the government's interference with his rights, he must seek a remedy independent of the Fifth Amendment. The present version of Rule 41(g) affords a remedy against governmental abuse in holding seized property unreasonably. *See Acadia,* 458 F.3d at 1333 ("the courts have recognized a right not to have property held ... for an unreasonable time and have crafted a remedy to vindicate that right.").

*Conclusion*

Although it only became clear once the Government filled in the gaps of information, the observance of Rule 41(g) procedures in this case confirms our view that the Government acted in accordance with its police powers. Under these circumstances, it was entirely legitimate for the Government to retain custody over the Plaintiff's pharmaceuticals. We agree with the Defendant that the takings clause of the Fifth Amendment provides no compensation and that the Government is entitled to judgment as a matter of law.

**Defendant's motion is hereby GRANTED. The Clerk of Court shall dismiss the Complaint filed in this case and enter judgment in favor of the Defendant.**

**IT IS SO ORDERED.**